UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID RUSSELL,                          §
                                        §
           Plaintiff,                   §
VS.                                     §    CIVIL ACTION NO. 2:13-CV-142
                                        §
FNU STROLENY, *et al*,                  §
                                        §
           Defendants.                  §

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In this prisoner civil rights action, Plaintiff David Russell complains that, while confined at the McConnell Unit in Beeville, Texas, Defendants violated his federal constitutional rights by subjecting him to repeated strip searches and by transporting him shackled, but without a seatbelt, at an unsafe speed. Defendants move for summary judgment to dismiss Plaintiff's claims for failure to state a claim and/or as frivolous, and also request that the dismissal be characterized as a "strike" for purposes of 28 U.S.C. § 1915(g). (D.E. 15). In the alternative, Defendants move for dismissal of Plaintiff's claims against them on the grounds of qualified immunity. *Id.,* pp. 6-7. Plaintiff has filed a response in opposition (D.E. 38, 39) and a cross-motion for summary judgment. (D.E. 36, 40).

For the reasons stated herein, Defendants' motion for summary judgment (D.E. 15) is granted, and Plaintiff's §1983 claims against Defendants Warden Davis, Captain Benavides, Lieutenant Stroleny, and Officer Zamora are dismissed with prejudice. In addition, the Court *sua sponte* has considered Plaintiff's claims against Officer Quiroga, a

named Defendant who has not made an appearance in this lawsuit,[1] and finds that Plaintiff fails to state cognizable constitutional violations against this Defendant, and therefore those claims are dismissed with prejudice. Finally, the Court denies Plaintiff's cross-motion for summary judgment (D.E. 36), but finds that the dismissal of this lawsuit shall not count as a strike for purposes of 28 U.S.C. § 1915(g).

## I.      Jurisdiction.

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.     Procedural background.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the Powledge Unit in Palestine, Texas, although his complaint involves events that arose while he was incarcerated briefly at the McConnell Unit in Beeville, Texas.

On February 27, 2012, while confined at the Lynaugh Unit in Fort Stockton, Texas, Plaintiff filed his original complaint in the United States District Court for the Western District of Texas, Pecos Division, alleging a myriad of constitutional violations against seven (7) officers and officials employed at the Lynaugh Unit, as well as three TDCJ employees assigned to the McConnell Unit: (1) Warden Lorie Davis; (2) Captain Benavides; and (3) Lieutenant Stroleny. (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36 (W.D. Tex. 2012), D.E. 1). In addition, Plaintiff named as defendants two officers who

---

[1] Summons was issued and service attempted, but there is no record of Officer Quiroga being served. (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36 (W.D. Tex. 2012), D.E. 40, 60).

had transported him to federal court on October 13, 2011, identified by Plaintiff as Unknown Driver #1 and Unknown Driver #2.  *Id.*, D.E. 1, p. 4.

On March 12, 2012, summons was issued in the Pecos Division case as to McConnell Unit Defendants Warden Davis and Lieutenant Stroleny.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 9, 15).   Thereafter, the Pecos district court ordered the Office of the Attorney General (OAG) to identify the "unknown drivers" who had transported Plaintiff on October 13, 2011, to the federal courthouse in Brownsville, Texas, and on July 2, 2012, the OAG identified those individuals as Officer Gerald Zamora and Officer Alberto Quiroga.  (*Id.,* D.E. 20, 32).   The OAG reported that Zamora and Quiroga were no longer employed with the TDCJ, and the OAG submitted under seal the last known addresses of these individuals.  *Id.,* D.E. 32, p. 2.  Service was then ordered on these Defendants.  *Id.,* D.E. 40.

On November 5, 2012, McConnell Unit Defendants Davis, Benavides, Stroleny, and Zamora filed their Answer and raised the defense of qualified immunity.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 52).

On November 29, 2012, service was again attempted on Officer Alberto Quiroga.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 60).  To date, there is no record of service of summons on Officer Quiroga, and the OAG has not received authority to represent this individual.

On May 17, 2013, the Pecos district court severed Plaintiff's claims against the McConnell Unit Defendants and transferred them to this Court.  (D.E. 6).

On June 13, 2013, Plaintiff notified the Court of his new address at the Beto Unit in Tennessee Colony, Texas.  (D.E. 14).

On June 18, 2013, Defendants Warden Davis, Captain Benavides, Lieutenant Stroleny, and Officer Zamora filed the instant motion for summary judgment.  (D.E. 15, 16).

On August 19, 2013, Plaintiff filed a motion for default judgment against Officer Quiroga.  (D.E. 20, 21).  It was recommended that Plaintiff's motion for default judgment be denied because Plaintiff offered no evidence that Officer Quiroga had been served with process (D.E. 34), and on November 27, 2013, the Court denied Plaintiff's motion for default judgment.  (D.E. 41).

On September 11, 2013, Plaintiff filed a motion to compel Defendants to produce any investigations or complaints regarding inmate transportation.  (D.E. 26).  On October 31, 2013, the motion to compel was denied without prejudice on the grounds that the information sought was not relevant to the issue of Defendants' entitlement to qualified immunity; however, Plaintiff was advised that, should his case survive summary judgment, he could re-urge the motion to compel.  (D.E. 33).

On September 16, 2013, Plaintiff filed a motion for a temporary restraining order (TRO) complaining of retaliatory actions of prison officials "across the state of Texas," including employees at the Lynaugh Unit, the Boyd Unit, the Beto Unit, and the Powledge Unit, and requesting that these officials be enjoined from harassing him. (D.E. 29, 30).  It was recommended that Plaintiff's TRO request be denied because, *inter alia*,

he was seeking relief against individuals not a party to this lawsuit.  (D.E. 37).   On November 27, 2013, the Court denied Plaintiff's request for a TRO.  (D.E. 42).

On October 31, 2013, Plaintiff filed his cross-motion for summary judgment (D.E. 36), along with a declaration in opposition to summary judgment (D.E. 38), and a statement of disputed facts.  (D.E. 39).  On November 29, 2013, Plaintiff was granted leave to file a supplement to his summary judgment materials.  (D.E. 40, 43).

## III.   Evidence offered.

In support of their motion for summary judgment, Defendants offer the following evidence:

> Ex. A:      Correspondence dated March 15, 2012, from Brandi Allums, Administrator of the TDCJ Office of Ombudsman, to Oliver Bell, Chairman of the Texas Board of Criminal Justice, relating the findings of an investigation into Plaintiff's claims, including his transportation complaint (D.E. 15-1, pp. 1-4); and

> Ex. B:      Relevant portions of Plaintiff's medical records (D.E. 17, pp. 1-7).

In support of his motion for summary judgment (D.E. 36), Plaintiff offers his declaration made under penalty of perjury (D.E. 38), his statement of disputed facts (D.E. 39), and his supplemental evidence (D.E. 40), which is a photocopy of his sister's obituary dated September 14, 2011.

The summary judgment evidence establishes the following:

On an uncertain date in October 2011, Plaintiff was transferred from the Lynaugh Unit to the McConnell Unit for purposes of attending an October 13, 2011 evidentiary hearing at the federal courthouse in Brownsville.  (*See Russell v. Swift, et al.,* Case No.

4:12-cv-36, D.E. 3, pp. 15-17).[2]  It was Plaintiff's understanding that he would be held at the McConnell Unit for approximately one week.  *Id.,* p. 15, ¶ 55.

On October 13, 2011, at 9:45 a.m., Plaintiff was escorted to an area known as the "chain cage," a holding area for prisoners that are waiting to be transported.  (D.E.38, p. 3). The chain cage is a holding pen made of chain link fence attached to a brick wall and divided into two areas.  *Id.*  Plaintiff was the only inmate in the chain cage at the time. *Id.* At approximately 10:15 a.m., an unidentified male sergeant escorted Plaintiff to a hallway approximately 25 feet away from the cage and ordered him to remove his clothes for a body cavity search.  *Id.*  Plaintiff protested because there were female officers in the area.  *Id.*  Lieutenant Stroleny was in the area also, and he was communicating with the male sergeant.  *Id.*  Plaintiff submitted to the search which involved "lifting the testicles and bending over to expose the anus and spreading the buttocks cheeks." *Id.*

After this strip search, Plaintiff was returned to the chain cage; however, approximately 10 minutes later, he was removed and searched again by a different male officer, but this time, the female sergeant waited in the doorway of the corridor.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, pp. 15, ¶ 55).  Plaintiff was again returned to the cage, but 15 minutes later, he was pulled out for a third cavity search.  *Id.*

---

[2] Plaintiff's claims against the McConnell Unit Defendants are set forth in his memorandum in support of original complaint.  This pleading was filed in the Pecos district court, but a copy was not filed under this case number when the case was transferred to this Court.  However, because the memorandum provides substantially more detail regarding Plaintiff's claims against the McConnell Unit Defendants than does his Original Complaint, it is appropriate to take judicial notice of its contents.

Before he could get redressed, his free world clothes arrived and he put those clothes on.[3] *Id.*

At approximately 10:50 a.m., Officer Quiroga performed a pat-down search of Plaintiff.  (D.E. 38, p. 3, ¶ 15).  Officer Quiroga then loaded Plaintiff into the back of the van, placing him on the left-side of the metal holding pen of the van; neither Officer Quiroga nor Officer Zamora secured Plaintiff with a safety belt or other safety restraint. *Id.*, ¶¶ 17-18. *(See also Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, p. 15, ¶ 57). The transport van did not have straps, handgrips, or seatbelts, and the back of the van had many sharp edges.  (D.E. 38, ¶ 17).  Plaintiff was "shackled, handcuffed, and a chain ran from [his] leg shackles to a black box on the handcuffs," and it was "impossible" for Plaintiff to brace himself during the trip. *Id.,* ¶ 18.

Plaintiff complained to the officers that he did not have his necessary legal papers for the hearing.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, p. 15, ¶ 57). Officer Quiroga told Lieutenant Stroleny that they were already running late and that the trip to Brownsville would take four hours; however, Lieutenant Stroleny ordered that Plaintiff receive his legal work before leaving for Brownsville. *Id.*  Plaintiff's legal property was located and he was given the necessary legal materials for the evidentiary hearing he was scheduled to attend; however, the majority of his legal materials and his

---

[3] In his declaration, D.E. 38, Plaintiff claims that he was "subjected to four (4) intrusive anal cavity body searches in a thirty five minute period…".  (D.E. 38, p. 3).  However, Plaintiff's allegations in the memorandum filed with the Pecos district court detail only the three searches described above.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, p. 15, ¶ 55).

personal hygiene items were left behind.  *Id.*   At approximately 11:05 a.m., the van

departed the McConnell Unit.  *Id.,* and D.E. 38, p. 3.

After leaving the McConnell Unit, Officer Quiroga and Officer Zamora stopped at

McDonalds, and thereafter, they began the drive to Brownsville.  (*See Russell v. Swift, et

al.,* Case No. 4:12-cv-36, D.E. 3, p. 16, ¶ 58).  Officer Quiroga was driving the van.  (*See*

D.E. 15-1, pp. 3-4, March 15, 2012 correspondence from TDCJ Office of Ombudsman

investigating, *inter alia,* Plaintiff's transportation complaint).[4]  At approximately 1:40

p.m., Officer Zamora called the McConnell Unit and reported to Sergeant Quintero that a

State Trooper with the Texas Department of Public Safety (TDPS) had pulled the

transport van over on Highway 77 in San Benito, Texas, for speeding, and that Officer

Quiroga had received a traffic citation for the offense.[5]  *Id.,* pp. 16-17, ¶ 60 - ¶ 62.  (*See*

*also* D.E. 15-1, pp. 3-4, March 15, 2012 correspondence from TDCJ Office of

Ombudsman investigating, *inter alia,* Plaintiff's transportation complaint).   Officer

Zamora also told Sergeant Quintero that a case manager for Magistrate Judge Felix Recio

had called the officers and advised them that Plaintiff was scheduled to appear in federal

---

[4] In their motion for summary judgment, Defendants identify the driver of the van as Officer
Zamora.  (*See* D.E. 15, p. 7).  However, Defendants' own evidence refutes this assertion as the
investigation by the TDCJ Office of Ombudsman found that Officer Quiroga was the driver, and
indeed, Officer Quiroga received a speeding citation.  (D.E. 15-1, p. 3).  Plaintiff characterizes
Defendants' misidentification of the driver as a "disputed fact."  (*See* D.E. 39, p. 5).  However, it
is not a disputed fact, but merely an incorrect identification by Defendants that does not alter the
summary judgment analysis.

[5] Brandi Allums, the Administrator of the TDCJ Office of Ombudsman, reported that the
speeding citation was later dismissed.  (DSJ Ex. B at 1).  In addition, Officer Quiroga did not
receive a reckless driving charge or any other violation on October 13, 2011.  *Id.*

court in Brownsville at 1:30 p.m.  (DSJ Ex. A, p. 1).  Following the TDPS stop, the van continued to Brownsville, arriving at the federal courthouse at 2:10 p.m.  *Id.*

After his court appearance, Plaintiff returned to the McConnell Unit that same day, and as he was exiting the transport van, Plaintiff apologized to Officer Quiroga about the speeding ticket.  (D.E. 38, p. 5, ¶ 28).  In response, Officer Quiroga grabbed Plaintiff by the handcuffs and stated: "I have many relatives working in the TDCJ so there's nowhere for you to hide."  *Id.*

While back at the McConnell Unit, Plaintiff did not complain of injuries nor did he file a sick call request to be seen by medical.  (*See* D.E. 17, pp. 1-7, Plaintiff's medical records).  However, for the four days following his return, Plaintiff attempted to get his additional legal materials and personal hygiene products, but was not able to do so.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, p. 17, ¶ 63).    In addition, Plaintiff was denied shower supplies and toilet paper until October 16, 2011. *Id.* Lieutenant Stroleny knew that Plaintiff needed his additional legal materials but he denied the legal property "for four (4) of the seven (7) days that [Plaintiff] was on the McConnell Unit." (D.E. 38, p. 5, ¶ 30).

## IV.    Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).   Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S.

at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

**V.    Discussion.**

**A.    42 U.S.C. § 1983.**

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or respondeat superior liability of supervisors under section 1983.  *Thompkins v. Belt,* 828

F.2d 298, 303-04 (5th Cir. 1987).  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).  For a supervisor to be liable under § 1983, the plaintiff must show that (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005). Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations."  *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

**B.     Eleventh Amendment immunity.**

Plaintiff has sued defendants in their official and individual capacities for monetary damages as well as for injunctive and declaratory relief.  (*See* D.E. 1, p. 5). Defendants move to dismiss Plaintiff's claims for money damages against them in their official capacities as barred by the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state…."  Const. Amend. XI.  This withdrawal of jurisdiction effectively confers an immunity from suit.  *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144 (1993).  As such, the Supreme Court has consistently held that an unconsenting State "is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Id.* (citation omitted).

*See also Frew v. Hawkins,* 540 U.S. 431, 437 (2004) (the Eleventh Amendment confirms the sovereign status of States by shielding them from suits by individuals, absent their consent);   *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999) (acknowledging that individuals are permitted to sue a State if the State consents, or Congress abrogates the State's sovereign immunity pursuant to the Fourteenth Amendment).

When a plaintiff files suit against state officials in their official capacities, the lawsuit is effectively one against the State.  *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Indeed, a claim for monetary damages against a state official in his or her official capacity is "no different from a suit against the state itself," and consequently, is barred by the Eleventh Amendment.[6]  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  *See also McKinley v. Abbott,* 643 F.3d 403, 406 (5th Cir.), *cert. denied*, 132 S. Ct. 825 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself."). Indeed, the Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims for money damages against TDCJ officers in their official capacities.  *See e.g., Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

---

[6] The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief.  *Ex parte Young*, 209 U.S. 123, 159 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office).  *See also Will,* 491 U.S. at 71, n. 10 (noting that official-capacity actions for prospective relief are not treated as actions against the State).

To the extent Plaintiff is suing Warden Davis, Captain Benavides, Lieutenant Stroleny, and Officer Zamora in their official capacities for money damages, those claims are barred by the Eleventh Amendment. *See Frew,* 540 U.S. at 437. Accordingly, Defendants' motion for summary judgment to dismiss with prejudice Plaintiff's monetary claims against them in their official capacities is granted. In addition, as a matter of law, Plaintiff's monetary claims against Officer Quiroga in his official capacity are barred by the Eleventh Amendment, regardless of whether he has been served or not, and therefore, Plaintiff's claims against Officer Quiroga in his official capacity are dismissed with prejudice.

### C.      Qualified immunity.

Defendants move for summary judgment to dismiss Plaintiff's claims on the grounds that his allegations fail to state cognizable constitutional violations and, even if they did, Defendants are entitled to qualified immunity and therefore not subject to suit. *See Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) ("The [qualified immunity] entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.") (emphasis in original).

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the

burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocana Gen. Hosp.,* 430 F.3d 245, 251-52 (5th Cir. 2005). First the plaintiff must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, the plaintiff must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.*

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

**Step 1 – Alleged constitutional violations.**

In his original complaint, Plaintiff makes the following allegation against the McConnell Unit Defendants:

> Davis, Benavides, Stroleny, and unknown drivers #1 and #2 created a 4th Amendment, 8th Amendment, 14th Amendment, and 1st Amendment violation and deprived Russell of his civil rights guaranteed by the U.S. Constitution.

(D.E. 1, p. 4). In his memorandum in support of his original complaint, Plaintiff claims that his Fourth Amendment rights were violated when he was subjected to four strip searches on October 13, 2011, before being transported to Brownsville. (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, p. 15, ¶ 56). He claims that his Eighth

Amendment right to be free from cruel and unusual punishment was violated when he was transported in the van to Brownsville, during which time he was not properly secured in the vehicle and Officer Quiroga drove at an unsafe speed. *Id.*, p. 16, ¶ 59.

**(1)      Strip searches of prisoners.**

Plaintiff contends that he was subjected to four separate body cavity searches during a 35-minute time frame while waiting to be transported to Brownsville.

The Fifth Circuit has concluded that a state prisoner has no protected Fourteenth Amendment liberty interest to be free from strip or body cavity searches. *Samford v. Staples*, 249 Fed. Appx. 1001, 1004 (5th Cir. 2007). This finding is premised on *Sandin v. Connor*, 515 U.S. 472 (1995), the seminal case in which the Supreme Court held that due process protections are generally limited to freedom from those particular restraints that impose "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84. Plaintiff fails to establish that the repeated strip searches on one day imposed a hardship beyond what is to be expected in ordinary prison life, and thus fails to state a due process claim.

Concerning the Fourth Amendment, in *Bell v. Wolfish,* 441 U.S. 520 (1979), the Supreme Court assumed for sake of argument that a prisoner might retain a Fourth Amendment right to privacy that could limit the powers of prison officials to conduct body cavity searches. In *Bell,* federal inmates objected to strip searches that included visual inspection of their body cavities following contact visits with persons outside the institution. *Id.* at 558. The offenders argued there was no security justification for the searches because officers searched the guests before they entered the visiting room, and

the inmates were under constant surveillance during the visit.  *Id.* at 577-78 (Marshall, J., dissenting).   In addition, there had only been one attempt by an inmate to smuggle contraband back into the facility.  *Id.* at 558.   The Supreme Court upheld the search policy, specifically deferring to the judgment of the prison officials that the inspections served not only to discover, but also to deter the smuggling of weapons, drugs, and other prohibited items.  *Id.* at 558.   The Court noted that there is no mechanical way to determine whether intrusions on an inmate's privacy are reasonable.  *Id.* at 559.   As such, the need for a particular search must be balanced against the resulting invasion of personal rights.  *Id.*

Since *Bell,* polices designed to keep contraband out of jails and prisons have been upheld.  For example, in *Block v. Rutherford*, 468 U.S. 576 (1984), the Supreme Court concluded that the Los Angeles County Jail could ban all contact visits because of the threat they posed, and found the general ban more feasible than carving out exceptions for certain detainees.  *Id.* at 587.   More recently, in *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510 (2012), the Supreme Court examined whether, absent reasonable suspicion of a concealed weapon or contraband, legitimate security concerns would override a detainee's objection to intrusive search procedures.  *Id.* at 1518.   The Court again held that deference must be given to prison officials unless there is "substantial evidence" indicating that the decision to perform an invasive search is "exaggerated."  *Id.*

Applying *Florence* to this action, to prevail on his Fourth Amendment claim, Plaintiff must present substantial evidence that being subjected to four strip searches on

one occasion, before being transported to federal court, constitutes an "exaggerated" response by Defendants, and this he does not do.  Plaintiff alleges that on four occasions, he was escorted by a male officer to a nearby corridor where a visual cavity search was conducted, and female officers were in the area.  To the extent Plaintiff claims that the presence of female officers rendered the searches "exaggerated," his claim must fail because the Fifth Circuit has concluded that strip searches, even those conducted in non-secluded areas and in the presence of prison employees of the opposite sex, are not unconstitutional. *See e.g Tasby v. Lynaugh*, 123 Fed. Appx. 614, *1 (5th Cir. 2005) (unpublished); *Oliver v. Scott,* 276 F.3d 736, 746 (5th Cir. 2002) (prison's legitimate penological interest in security is greater than a prisoner's minimal right to bodily privacy such that cross-sex surveillance raises no Fourth Amendment interest); *Elliott v. Lynn,* 38 F.3d 188, 191-92 (5th Cir. 1994) (strip searches in presence of opposite sex not unconstitutional); *Letcher v. Turner,* 968 F.2d 508, 510 (5th Cir. 1992) (security concerns can justify the strip search of a male inmate in front of female guards).  The Fifth Circuit has recognized that a strip and cavity search by an officer of the opposite sex in a non-emergency situation can give rise to a Fourth Amendment claim.  *See Moore v. Carwell*, 168 F.3d 234, 235-37 (5th Cir. 1999).  However, Plaintiff admits that the strip searches of which he complains were conducted by male officers and that he was taken into a side corridor.

To the extent Plaintiff complains of the sheer number of searches, he fails to demonstrate that four searches were an "exaggerated" response under the circumstances of this case: Plaintiff was not merely being escorted within the prison, but instead, was

leaving the prison to attend *federal court*.[7]   Indeed, Plaintiff was being taken beyond the confines of the prison to a federal building where he could possibly encounter members of the public, as well as federal court employees, and members of the judiciary.  Indeed, a policy requiring that four different officers should conduct a search before an offender is transported by van to federal court is not *per se* unreasonable, and to the contrary, is in furtherance of a legitimate penological need.  *See Hutchins v. McDaniels,* 512 F.3d 193 (5th Cir. 2007) (noting that searches of prisoners must be conducted in a manner that is reasonable under the facts and circumstances in which they are performed).  Plaintiff fails to state a Fourth Amendment violation.

As to the Eighth Amendment, Plaintiff fails to identify any individual officer, let alone a Defendant, that purposely repeated the strip search or any other facts to suggest that the strip searches were performed as punishment.  Moreover, the Fifth Circuit has refused to extend the Eighth Amendment to strip searches.  *See Moore*, 168 F.3d at 237.

Finally, even if Plaintiff could establish that the strip searches violated his constitutional rights, the summary judgment evidence establishes that none of the named Defendants was personally involved in the searches, nor did a named Defendant order the searches.  The mere fact that Lieutenant Stroleny was "in the area" at the time of the searches does not equate with personal involvement.  Thus, Plaintiff fails to establish a cognizable constitutional violation against any Defendants based on his body cavity search allegations.

---

[7] In his memorandum, Plaintiff states only that he was removed from the transport cage three times to be searched, and then, before he could get redressed, he was given his free world clothes. (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36, D.E. 3, p. 15, ¶ 55).

### (2)    Transportation claim.

Plaintiff maintains that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was placed in the transport van without proper safety restraints and subjected to Officer Quiroga's speeding.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials must provide humane conditions of confinement; ensure that inmates   receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Fifth Circuit recently evaluated a prisoner's Eighth Amendment claim alleging that he was seriously injured when the prison van in which he was riding came to a sudden stop.   *Rogers v. Boatright,* 709 F.3d 403 (5th Cir. 2013).  In that case, two TDCJ correctional officers were transporting Rogers by van to a doctor's appointment at the veterans hospital. *Id.* at 406.  Rogers claimed that the driver was driving the van recklessly "darting in and out of traffic at high speeds."  *Id.*  Like Plaintiff Russell, Rogers was caged in the back of a van, sitting on a narrow bench, shackled in leg irons and handcuffs that were attached together by a chain, and no seatbelt.  *Id.*  At one point, the driver was driving so fast that he had to brake suddenly to avoid hitting a vehicle in front of him.  *Id.* Rogers was thrown head-first into the end of the cage, and sustained

head, neck, spinal, vision and hand injuries, as well as a three-inch laceration on his scalp and a wound to his hand. *Id.*

The district court dismissed Rogers' deliberate indifference claim against the driving officer at § 1915A screening, finding that his allegations stated a claim of negligence or gross negligence at best, and Rogers appealed. *Rogers*, 709 at 406-07. On review, the Fifth Circuit concluded that the district court had erred in dismissing Rogers' deliberate indifference claim at the screening stage because Rogers had alleged that he could not protect himself in the van, he was denied a seatbelt, and he specifically alleged that the driver "*knew that other prisoners had been injured when the prison van in which they were riding stopped abruptly.*" *Id.* at 408 (emphasis added). Rogers claimed also that, notwithstanding this knowledge, the driver drove the van recklessly and Rogers sustained serious injuries when the driver had to stop suddenly. *Id.* The Fifth Circuit reversed the dismissal and remanded Rogers' deliberate indifference claim as it related to the driver of the van. *Id.*

In two earlier decisions, the Fifth Circuit found the plaintiff's allegations did not state cognizable Eighth Amendment claims. In *Cooks v. Crain*, 327 Fed. Appx. 493 (5th Cir. 2009) (unpublished), an inmate-plaintiff complained of being transported in vehicles without seatbelts, comparing it to second-hand smoke exposure. *Id.* at 493. The Fifth Circuit affirmed the district court's dismissal of the case as frivolous finding that the plaintiff's claim "did not concern a present and continuing harm but merely asserted 'the need for an extra measure of safety against the possibility of harm.'" *Id.* at 494. Similarly, in *Bell v. Norwood*, 325 Fed. Appx. 306 (5th Cir. 2009), the Fifth Circuit

affirmed the dismissal of Bell's Eighth Amendment claim premised on being transported in vehicles without seatbelts. *Id.* at 307-08.

The Eight Circuit has allowed prisoner-plaintiffs to bring Eighth Amendment transportation claims where the plaintiff alleges no seatbelts, reckless driving, and a resulting injury. *See Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008); *Brown v. Missouri Department of Corrections*, 353 F.3d 1038 (8th Cir. 2004) (per curiam). The Tenth Circuit rejected a prisoner's Eighth Amendment claim premised only on the denial of seatbelts, finding that "[t]he eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted." *Dexter v. Ford Motor Co.*, 92 Fed. Appx. 637, 640-41 (10th Cir. 2004) (unpublished).

The fact that Plaintiff was transported on only one occasion without a seatbelt, in and of itself, fails to state a constitutional violation. Moreover, Plaintiff fails to state cognizable Eighth Amendment claims against Warden Davis, Captain Benavides, Lieutenant Stroleny, and Officer Zamora because he offers no evidence to suggest that these Defendants knew or should have known that Officer Quiroga would speed when he drove to Brownsville. Plaintiff does not suggest that Officer Quiroga had a history of speeding or reckless driving, let alone that Defendants had knowledge of any driving problems and ignored them. Plaintiff fails to allege any personal involvement of Warden Davis or Captain Benavides regarding any decision to transport Plaintiff, and these individuals cannot be held liable based on their supervisory roles alone. As to Lieutenant Stroleny, Plaintiff alleges only that he was "in the area" when Plaintiff was placed in the van. Plaintiff does not claim that he protested to Lieutenant Stroleny about the lack of

22 / 26

seatbelts, although he admits that he asked Officer Quiroga for his legal papers, and Lieutenant Stroleny ensured that he received them.  Plaintiff does not claim that Officer Zamora or Officer Quiroga refused to use a seatbelt or ignored Plaintiff's request to be better secured.  Quite simply, Plaintiff fails to establish that Defendants knew of a serious risk of harm to Plaintiff, and then ignored that risk.

### *Defendant Quiroga*.

As previously noted, despite two attempts to serve this individual, there is no evidence that Officer Quiroga has been served with Plaintiff's complaint.  However, the Court may, *sua sponte,* order dismissal on subject matter jurisdiction grounds even if the defendant has not yet been served).  *See e.g. Duncan v. Perez,* 2005 WL 1515428, *1 (5th Cir. 2005); *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming appropriate *sua sponte* evaluation of the merit of the asserted claim).

Plaintiff complains that Officer Quiroga violated his Eighth Amendment rights because he drove the van at an unsafe speed and recklessly, knowing that Plaintiff was shackled, and with no means to brace himself against sudden stops or turns.

In *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), the Supreme Court held that high-speed chases by law enforcement officials with no intent to harm the suspects did not give rise to liability under the Eighth or Fourteenth Amendment. *Id.*, 853-54. That is, an essential aspect of Eighth Amendment liability is evidence that the state official acted with "purpose to cause harm."  *Id.*  Indeed, the federal courts have noted repeatedly that the Eighth Amendment concerns conduct that is "repugnant to the

conscience of mankind" and in which there is some associated physical injury, although the injury need not be significant, but must be more than *de minimis*.  *See e.g. Hudson v. McMillan,* 503 U.S. 1, 9-10 (1992); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

Plaintiff has failed to offer any facts to suggest that Officer Quiroga intentionally attempted to cause him physical harm, and indeed, Plaintiff admits that he did not suffer any physical injury when he was transported on October 13, 2011, in a van, unrestrained and at high speeds.[8]  That is, the single incident of Officer Quiroga transporting Plaintiff at a high rate of speed without a safety restraint with no corresponding injury is not sufficiently serious or egregious to state a constitutional violation.  Accordingly, the Court finds that Plaintiff has failed to state a cognizable constitutional violation against Officer Quiroga, and his claims against this Defendant are dismissed with prejudice.

**(3)    Delay in receiving legal materials.**

Plaintiff complains that, after returning to the McConnell Unit from the hearing in Brownsville, he was without his additional legal materials that he had not taken to the hearing.  He claims that, although he was sent back to the Lynaugh Unit within a week, he did not receive all of his property back until some four months later.  (D.E. 38, p. 5, ¶ 29).

---

[8] The summary judgment evidence establishes that Plaintiff did not claim a physical injury or otherwise seek medical assistance following the trip to Brownsville.  (*See* D.E. 17, pp. 1-7). Moreover, to the extent that Plaintiff was afraid or otherwise traumatized from Officer Quiroga's driving, without a physical injury, he has no basis for mental or emotional damages.  *See* 42 U.S.C. § 1997e(e).

Defendants have not specifically addressed this claim in their summary judgment motion; however, there is no genuine issue of a material fact that Plaintiff fails to establish that any named Defendant was personally involved in the handling or storing of his personal property.  In addition, Plaintiff raised his property claims in the Pecos district court, and those claims were dismissed as frivolous.  (*See Russell v. Swift, et al.,* Case No. 4:12-cv-36 (W.D. Tex. 2012), D.E. 105, pp. 22-24, and D.E. 107).

**Step 2 – Objective reasonableness.**

At the second step of the qualified immunity analysis, a plaintiff must articulate the asserted constitutional right more specifically.  *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 460 (5th Cir. 2001).  Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendant violated the United States Constitution." *Id.* (citation omitted).  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  Even officers who interpret the law mistakenly but reasonably are entitled to immunity. *Creighton*, 483 U.S. at 641.  The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no

reason to know they were exposing themselves to liability.  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 928 (5th Cir. 1992).

Viewing all the evidence in the light most favorable to Plaintiff, as non-movant, Plaintiff fails to establish that any named Defendant consciously disregarded a serious risk to his health and safety or otherwise violated his federal constitutional rights on October 13, 2011.  Plaintiff's allegations fail to raise cognizable constitutional claims, and there are no genuine issues of material fact to consider at trial.

## VI.   Conclusion.

Based on the foregoing, the Court grants Defendants' motion for summary judgment (D.E. 15), and denies Plaintiff's cross-motion for summary judgment. (D.E. 36).  Plaintiff's claims against Warden Davis, Captain Benavides, Lieutenant Stroleny, and Officer Zamora are dismissed with prejudice.  In addition, the Court *sua sponte* dismisses with prejudice Plaintiff's claims against Officer Quiroga.

ORDERED this 31st day of January, 2014.

Nelva Gonzales Ramos
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE